**BOWLES, Adm'r, Office of Price Administration, v. F. URI & CO.**

No. 23180–G.

District Court, N. D. California, S. D.

July 11, 1944.

Thomas C. Ryan and W. H. Brunner, Office of Price Administration, both of San Francisco, Cal., for plaintiff.

Edmond F. Maher, of San Francisco, Cal., for defendant.

GOODMAN, District Judge.

The question submitted by the parties for the determination of the Court, upon pre-trial conference in this case, arises out of the issue made by the complaint of the Price Administrator filed February 29, 1944, and the answer of the defendant filed May 8, 1944.

By the complaint, the Administrator seeks treble damages under Section 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 925(e), and an injunction under Section 205(a) of the Act. The Administrator claims that the defendant infracted, during the periods stated in the complaint, revised maximum price regulation No. 169 (as amended by amendments 12 and 16) and revised maximum price regulation 239 (as amended by amendment 7.) Said price regulations were promulgated by the Administrator pursuant to the authority vested in him under Section 2(a) of the Act, 50 U.S.C.A. Appendix, § 902(a). The infraction charged is that defendant sold meats at the higher prices allowed to those having the status of a "hotel supply house" at a time when defendant was not entitled to such status.

### Hotel Supply House.

"Hotel supply house" is defined in the regulations as follows:

" 'Hotel supply house' means a separate selling establishment which is not physically attached to a packing or slaughtering plant, packer's branch house, wholesaler's or other selling establishment; which is engaged in the fabrication of meat cuts and in the sale of fabricated meat cuts, variety meats and edible by-products to purveyors of meals; and which during the period September 15, through December 15, 1942 sold to purveyors of meals, other than war procurement agencies, 70 per cent of the total weight volume of meat, variety meats, or edible by-products sold by it."

The Administrator has interpreted the regulation to mean that a "hotel supply house" loses its status as such if it sells meat to any but purveyors of meals. See Price Interpretation No. 29 issued by the Office of Price Administration, some months after the promulgation of the regulation.

Wide latitude is granted to the Administrator, with respect to the format of the regulations, under Section 2(c) of the Act, which provides: "Any regulation or order under this section may be established in such form and manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions, as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of this Act."

The defendant contends that the regulation per se does not admit of the interpretation placed upon it by the Administrator. It is claimed that the last clause of the regulation, beginning with the words, "and which," indicates that a "hotel supply house" even though required to be a "separate selling establishment" need not sell to purveyors of meals more than the amount of meat so sold during the base period designated in the regulation.

The rules of construction to be here invoked are not the orthodox criteria applied to private contracts or in ordinary litigation. Technical dissection of language, and niceties resting upon punctuation, have no judicial appeal. The regulation must be considered in the light of the extraordinary objectives of a statute engendered by emergency and "as conditioned by the necessities of the public interest which Congress has sought to protect." Hecht Co. v. Bowles, 321 U.S. 321, at page 330, 64 S.Ct. 587, at page 592.

It is conceded that if the regulation means what the Administrator claims, the defendant has infracted the same. With the validity of the regulation, this Court has no concern. Section 204(d) of the Act, 50 U.S.C.A. Appendix, § 924(d). The Court is here called upon to determine the meaning of the regulation only for the purpose of deciding whether defendant has infracted as charged in the complaint.

By the regulation, it seems clear to the Court the Administrator intended to give a separate status to those engaged in selling meat to purveyors of meals. The "statement of considerations," issued by the Administrator pursuant to Section 2(a) of the Act, indicates some of the factors underlying and justifying such purpose and intent. Meat purveyors, a substantial amount of whose sales during the base period, were to purveyors of meals, are granted by the regulation the status of a "hotel supply house," if they maintain a separate selling establishment devoted to that business. There appear to be adequate administrative bases for this requirement. Difficulty of enforcement to attain the objectives of the law alone appears to be an adequate reason. Designating "a hotel supply house" in the regulation as "a separate selling establishment" would seem to have no other reasonable purpose than that of exclusion of any other selling activity.

Having in mind the objectives of the Act and the power and duties therein delegated to the Administrator, I am satisfied that the regulation clearly means what it says. The defendant must maintain a "separate selling establishment" devoted to sales to purveyors of meals in order to maintain the status of "a hotel supply house."

A pre-trial order may be prepared in accordance with the views expressed by the Court.

The Court desires to make this further comment:

Plaintiff seeks both treble damages and an injunction. Thus is raised a question which should be resolved by the Court in the light of the nature of the power vested in the Court in the enforcement of this statute. This subject is clarified by the

decision of the Supreme Court in Hecht Co. v. Bowles, supra. It may be that both remedies may be allowed or that only one of the two remedies sought is proper. On the other hand it may be that some "other order" as provided in Section 205(a) of the Act would more fully meet the "standards of public interest," under the special circumstances of this case. In Hecht Co. v. Bowles, the Supreme Court indicated, even though it was there only considering Section 205(a) of the Act, that it was desirable that full opportunity should be afforded for equity courts to treat enforcement proceedings in accordance with traditional equity practices. Therefore counsel are advised that the Court does not feel that it can justly determine the proper remedy to be allowed in this case until further light is thrown upon the issues at the trial of the cause.